**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CYDRIC COLEMAN,** | ) | |
| **ID # 37473-177,** | ) | |
| **Movant,** | ) | **No. 3:13-CV-0756-O-BH** |
| **vs.** | ) | **No. 3:10-CR-0038-O** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody,* filed February 15, 2013 (doc. 2), should be **DENIED** in part and **GRANTED** in part, and the movant's sentence should be **VACATED**.

**I.  BACKGROUND**

Federal inmate Cydric Coleman (Movant) challenges his federal conviction and sentence in Cause No. 3:10-CR-0038-O. The respondent is the United States of America (Government).

**A.     Conviction and Sentencing**

On February 18, 2010, Movant and four co-defendants were indicted for conspiring to distribute five or more grams of cocaine in violation of 21 U.S.C. § 846. (*See* doc. 1). Movant initially signed a plea agreement in which he agreed to plead guilty as charged in the indictment.[1] He also signed a factual resume in which he admitted to being a member of a drug trafficking operation and criminal street gang called the West Side Gator Boys, and to conspiring to possess with intent to distribute at least 40.3 grams of crack cocaine and 439.8 grams of marijuana. (*See*

---

[1] Movant's four co-defendants pled guilty as charged in the indictment. (*See* Presentence Report "PSR" at 4-5).

docs. 99, 103).   Approximately twelve hours prior to his rearraignment hearing, which was scheduled to occur on August 19, 2010, Movant informed his attorney that he would not plead guilty and wanted to change his plea.  (*See* docs. 107, 109).

On September 2, 2010, Movant was charged by superseding indictment with: 1) conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (count one); 2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i), (C)(i) (counts two and four); and 3) conspiracy to maintain drug-involved premises in violation of 21 U.S.C. § 846 (count three).  (*See* doc. 124.)  He pled not guilty and was tried before a jury on September 13-16, 2010.  The jury found Movant guilty on all four counts. (doc. 151.)  After a hearing on February 10, 2011, the Court imposed a sentence of 120 months on Counts One and Three, a mandatory consecutive sentence of five years on Count Two, and a mandatory consecutive sentence of 25 years on Count Four, to followed by a five-year term of supervised release. (doc. 194).

The Fifth Circuit affirmed in an unpublished opinion on February 29, 2012.  *United States v. Coleman*, 463 Fed. App'x 322 (5th Cir. Feb. 29, 2012).  It  recounted the evidence presented at trial as follows:

> Several witnesses testified that the Gator Boys controlled and operated numerous drug houses including: 4009 Ivanhoe Street, 3206 Puget Street, 3212 Puget Street, 2021 Morris Street, 2025 Shaw Street, and 2008 Kraft Street.  The gang's leaders Patrick Weatherall (Weatherall), Tyrone Weatherall, and Devinn Mitchell secured the cocaine, converted it to crack cocaine, and supplied it to their mid-level supervisors and street dealers.  Weatherall also furnished Coleman and others with houses from which to sell the drugs and firearms for protection against robberies. Coleman and the other mid-level supervisors controlled the Gator Boys's numerous drug houses and were responsible for collecting the drug proceeds.

> Codefendant Brandon Smith testified that he and Coleman were members of the Gator Boys gang, that they often sold crack cocaine together at various Gator Boys drug houses, and that Coleman was in charge of running several drug houses.

2

Smith also testified that he, Coleman, and other Gator Boys working at the drug houses carried firearms for protection approximately 99.9 percent of the time. Coleman confessed that he was a member of the Gator Boys, that he regularly purchased crack cocaine from Weatherall, and that he sold these drugs at Weatherall's drug houses on Ivanhoe Street, Puget Street, and Morris Street.

On July 10, 2006, Coleman witnessed a coconspirator sell 14.9 grams of crack cocaine to an undercover officer at 4009 Ivanhoe Street, 3206 Puget Street, 2021 Morris Street, and 2008 Kraft Street. Searches of these houses resulted in the seizure of various quantities of crack cocaine and marijuana, as well as other evidence of drug trafficking. At the time of Coleman's arrest at the Gator Boys drug house on 3206 Puget Street, officers observed a semi-automatic handgun. The handgun was loaded, readily accessible, and in close proximity to the drugs. As a convicted felon, Coleman's possession of the handgun was unlawful. Although other coconspirators were also present and arrested, law enforcement officers testified that the handgun was in plain view and that Coleman was running the house. Although no drugs were found at the Gator Boys drug house on 2021 Morris Street at the time of Coleman's arrest for being a felon in possession of a firearm, law enforcement officers explained that they did not have probable cause to search the house. Further, Coleman confessed that he had been selling drugs from this house for several months prior to his arrest and that Weatherall had given him the firearm for protection against robberies.

*Coleman*, 463 Fed. App'x at 324-25. Movant did not file a petition for writ of certiorari.

**B.** **Substantive Claims**

Movant asserts the following claims:

(1) trial counsel was ineffective by failing to advise him that he could plead guilty to the one-count indictment and be sentenced between 87 to 108 months without entering into a cooperation agreement with the government (ground one);

(2) he is eligible for resentencing under the Fair Sentencing Act (ground two); and

(3) Counts One and Three of the indictment are multiplicitous (ground three).

(*See* Mot. at 14-15.) The Government filed a response brief on April 15, 2013. (*See* Resp. Opp'n Mot. (Resp.).) Movant filed a reply brief on May 14, 2013, and an affidavit in support of his § 2255 motion on January 14, 2014.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error.  *Shaid*, 937 F.2d at 232.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the procedural bar defense.  *Willis*, 273 F.3d at 597.

## III.  PROCEDURAL BAR

The Government asserts that Movant's third ground for relief, i.e., that Counts One and Three of the indictment are multiplicitous and violated the constitutional bar against double jeopardy, is procedurally barred because it was not raised on direct appeal. (Resp. at 21).

As noted, defendants may be procedurally barred from collaterally attacking claims that were not raised in a direct appeal.  *Willis*, 273 F.3d at 595.  To overcome the bar, they must show "cause"

for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude." *Id.* The only exception is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he is actually innocent of the crime convicted. *Id.*

Movant does not assert either cause or prejudice, and he does not establish a fundamental miscarriage of justice. In his reply brief, he cites a Supreme Court case holding that a guilty plea does not waive a double jeopardy claim. (Reply at 3-4). He did not plead guilty, however, and the Government is not asserting that a guilty plea waives this claim. Because neither cause nor prejudice has been established for his failure to raise this claim on direct appeal, Movant's third ground for relief is procedurally barred and should be denied.[2]

## IV.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground, Movant asserts ineffective assistance of counsel. (Mot. at 14). In his § 2255 motion, he claims that his attorney did not inform him that he could plead guilty to the original one-count indictment and receive a sentence of 87 to 108 months without cooperating with the Government, and that he would have pled guilty had he been advised that he did not have to cooperate. (*Id.*) In an affidavit filed well after the Government's response, Movant specifically asserts that his attorney advised him that he would have to cooperate and testify against co-defendants Patrick Weatherall and Tyrone Weatherall if they went to trial in order to receive a

---

[2] Even if this ground for relief was not procedurally barred, it is without merit. Count One charged Movant with conspiracy to distribute a controlled substance, requiring proof that two or more persons reached an agreement to possess with intent to distribute cocaine. Count Three charged him with conspiracy to maintain a drug-involved premises, which required proof that two or more persons reached an agreement to manage or maintain a premises for storing, distributing, or using a controlled substance. (*See* doc. 140, Jury Charge). These are two separate offenses requiring proof of different elements, and charging Movant with both did not violate the constitutional prohibition against double jeopardy. *See United States v. Tucker*, 345 F.3d 320, 337 (5th Cir. 2003) ("The test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not.")

sentence of between 87 to 108 months. (*See* Affidavit, doc. 7).

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

In his § 2255 motion, Movant alleges that counsel did not explain that a plea of guilty to

Count One would have only exposed him to a guideline level of 24 with a sentencing range of between 87 and 108 months, based on his criminal history category of 3 and a 3-level reduction for acceptance of responsibility. (Mot. at 14.) His sworn motion concedes, however, that counsel spoke with him about a possible "sentence range of 87 to 108 months and that the government could file a 5K1 Letter with the Court [if] he debrief[ed] with the government. The 5K1 Letter would allow the court to downward depart and sentence him to lesser time [or] even probation." (*Id.*) Counsel "urged him to cooperate with the government in order to receive a lenient sentence", so Movant "assumed" that he would have to cooperate to get a sentence between 87 and 108 months. (*Id.*) The motion does not specifically allege that counsel told Movant that he had to cooperate to get a sentence between 87 and 108 months.[3]

In an affidavit he filed well after the Government's response and his reply, Movant expressly asserts for the first time that his attorney advised him that he would have to cooperate and testify against co-defendants Patrick Weatherall and Tyrone Weatherall, if they went to trial, in order to receive a sentence of between 87 to 108 months. (*See* Affidavit, doc. 7). This new specific claim that his attorney advised him that he would have to testify against one of his co-defendants in order to receive a specific range of punishment is inconsistent with the allegations and statements in the initial motion, the written plea agreement, and the facts as they existed when Movant signed the plea agreement and was scheduled to plead guilty.

In the plea agreement he initially signed on August 13, 2010, in which he was pleading guilty to Count One of the original indictment, Movant agreed as follows:

> Coleman shall give complete and truthful information and/or testimony concerning his participation in the offense of conviction.

_____

[3] Movant included the attorney's one-page notes with the reply brief. The notes state at difference places on the page "level 24", "5k if debrief", "24 + 4 bc conspiracy", and "87-108 months". (Reply at 6).

> Upon demand, Coleman shall submit a personal financial statement under oath and submit to interviews by the government and the U.S. Probation Office regarding his capacity to satisfy any fines or restitution.

(doc. 99 at 3).   The agreement further states that in exchange for Movant's guilty plea, the Government agreed not to bring any additional charges against him based on the underlying conduct. *Id*.  Finally, the agreement states that "[t]his document is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties." *Id*. at 5.  The agreement does not mention cooperation against co-defendants.

Additionally, all four of Movant's co-defendants had already pled guilty by the time Movant signed the plea agreement on August 13, 2010.  Christopher Mitchell and Brandon Smith had pled guilty on April 29, 2010 (three and one half months earlier), and Roderick Fuerry and Patrick Weatherall had pled guilty on June 30, 2010 (one and one half months earlier).  (*See* PSR at 4-5). Tyrone Weatherall was not one of Movant's co-defendants.  He signed a plea agreement and factual resume in a separate case on August 16, 2010, three days before Movant was scheduled to plead guilty, and he entered his plea on August 20, 2010.  *See United States v. Tyrone Weatherall*, No. 3:10-CR-0040-D (4) (docs. 105, 106).  Movant's late-filed affidavit not only contradicts his previous sworn statements in his § 2255 motion, but it also contradicts the presumption of regularity given to the Court's records.  *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

Movant has failed to establish that his trial attorney was ineffective under the *Strickland* standard.  Courts presume that a movant's trial counsel's conduct "falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  Movant's own sworn statements and counsel's

notes reflect counsel's estimation of the potential range of punishment that Movant might have received if he pled guilty to Count One, and his statement that Movant could seek an even lower sentence, possibly "even probation", with further cooperation.  Movant did not initially allege that counsel told him he had to cooperate to get a sentence between 87 and 108 months, only that *he assumed* that he had to cooperate to get that sentencing range.  His co-defendants all pled guilty months before Movant decided not to plead guilty as scheduled.  This decision resulted in additional charges being filed against him, of which he was found guilty beyond a reasonable doubt by a jury. These events were not due to ineffective assistance of counsel.  Movant has not overcome the presumption of reasonable assistance, and his first ground for relief is without merit and should be denied.

## V.  FAIR SENTENCING ACT

Finally, Movant asserts in his second ground for relief that he is eligible to be resentenced for Count One of the indictment because under the Fair Sentencing Act (FSA), he is no longer subject to a mandatory minimum 10-year sentence.  (Mot. at 14).  Under the FSA, the minimum sentence for the amount of crack cocaine that Movant was convicted of conspiring to distribute, and for which he was held responsible in the pre-sentence report, is now five years.  The FSA applies to crimes committed prior to its enactment.  *Dorsey v. United States*, 132 S.Ct. 2321, 2331 (2012); *see also* 21 U.S.C. § 841(b)(1)(B).  The Government concedes that Movant is entitled to be re-sentenced pursuant to *Dorsey*.  Movant's sentence should be vacated, and he should be re-sentenced.

## VI.  EVIDENTIARY HEARING

The Fifth Circuit has stated that a defendant who has filed a § 2255 motion is entitled to an evidentiary hearing on his motion only if he presents "independent indicia of the likely merit of [his] allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013), *quoting United States v.*

*Cavitt,* 550 F.3d 430, 442 (5th Cir. 2008).   When a movant's allegations contradict earlier sworn testimony in court, courts have typically required that the allegations be supported by the affidavit of a reliable third person.   *Reed,* 719 F.3d at 373; *see also United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).   Movant's only evidence of his claim that his attorney told him he would have to testify against his co-defendants in order to receive a sentence of between 87 and 108 months is his affidavit, filed after the Government's response and his own reply.   This affidavit, which is inconsistent with his own prior sworn statements and evidence as well as the record, is not "independent indicia" of the likely merit of his allegations.   He is therefore not entitled to an evidentiary hearing on this issue.   *See Reed,* 719 F.3d at 374 (holding that the defendant was entitled to a hearing on his § 2255 motion where he made a specific, sworn allegation, not contradicted by any evidence in the record, that his trial counsel had predicted a certain sentence if he pled guilty).

## VII.  RECOMMENDATION

Movant's first and third grounds for relief in his *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* should be **DENIED** with prejudice. His second ground for relief should be **GRANTED**, his sentence should be **VACATED**, and he should be re-sentenced.

**SIGNED this 5th day of June, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

11